# IN THE TAX COURT OF THE
# STATE OF OREGON

James C. COLLIER et al,

*v.*

CITY OF SHADY COVE,
a municipal corporation of the State of Oregon

(TC 4216)

Lee Ferguson, attorney at law, Medford, represented Plaintiffs (taxpayers).

Arden Olson, Harrang, Long, Gary, Rudnick, P.C., Eugene, represented Defendant (city).

Decision for Defendant rendered August 6, 1998.

### CARL N. BYERS, Judge.

Plaintiffs are interested taxpayers who believe something shady is going on in the City of Shady Cove. They claim that Defendant (city) violated several provisions of the local budget law in budgeting and levying taxes for the 1997-98 tax year. The city denies any violation and a trial was held July 8, 1998, in Medford.

## FACTS

Shady Cove is a city of approximately 2,200 residents. It provides its citizens with basic services such as police protection, sewer, streets, planning, zoning, and subdivision control. For the two fiscal years prior to 1997-98, the city had an operating deficit, resulting in cutbacks to city staff and doubling-up of duties by those remaining. The new mayor, who was previously on the budget committee for four years, was committed to getting the city on more solid financial ground. Starting in December 1996, he began working with city staff to build a budget that was more "conservative,"

that is, less optimistic about expected revenue and estimating greater expenditures. After properly noticed public hearings by both the budget committee and the city council, on June 24, 1997, the city council adopted a resolution adopting a budget for 1997-98 and levying property taxes. Appropriate documents were sent to the Jackson County Assessor. The assessor's office determined that the levy exceeded the six percent increase allowed by law and returned the documents to the city for correction. On August 21, 1997, without published notice of a hearing, the city council passed a new resolution. This resolution repealed the June 24 resolution and then readopted the budget and levied the reduced amount. The new resolution and the appropriate documents were delivered to the assessor, who levied the reduced taxes.

## ISSUES

Taxpayers claim violations of the local budget law as follows: (1) The city adopted a budget and imposed the tax levy without published notice or public hearing; (2) The city intentionally ignored known resources in order to levy a greater tax than necessary; and (3) There were adequate funds in the sewer fund so that no tax levy was necessary. The court will address these issues in the order presented.

*First Claim*:   The city adopted a budget and imposed the tax levy without published notice or public hearing.

ORS 294.405 authorizes this court to modify or void a tax levy only if the court finds that the budget and tax levy were not prepared and made "in substantial compliance" with the local budget law. "Substantial compliance has two elements: (1) An effort to comply fully with the statutes; and (2) a failure so to comply amounting to a minor error or irregularity." *Gugler v. Baker Co. Ed. Serv. Dist (Gugler I)*, 305 Or 548, 557, 754 P2d 891 (1988). Under that standard, insubstantial errors or omissions such as technical violations are not sufficient to disturb a budget. *See Sagaitus v. City of Waldport*, 14 OTR 80 (1996).

The local budget law, ORS 294.305[1] to ORS 294.565, is intended to establish standard procedures for the

---

[1] All references to the Oregon Revised Statutes are to 1995.

preparation, presentation, and administration of municipal corporation budgets and to afford the public limited participation in the process. ORS 294.321. Notices must be published informing the public that they can attend meetings of the budget committee and of the governing body where the proposed budget will be discussed. Also, copies of the proposed budget must be published. At the meetings, taxpayers can give their input or ask questions about the proposed budget. Thereafter, the governing body:

> "[S]hall enact the proper ordinances or resolutions to adopt the budget; to make the appropriations; to determine, make and declare the ad valorem tax levy for each fund; and to categorize the levy provided in ORS 310.060(2)." ORS 294.435.

■ The governing body may change the proposed budget estimates and proposed tax levy of any fund, but any increase in any estimated expenditures cannot exceed 10 percent unless the amended budget document is republished and another public hearing is held. ORS 294.435(1).

Taxpayers do not claim the city failed to publish notices or that it unfairly conducted the public hearings which preceded the adoption of the budget on June 24, 1998. However, taxpayers do claim that the city violated the local budget law when it repealed the June 24 resolution (No. 97-09-697) and adopted a new one (No. 97-14-897) without prior published notice. Taxpayers are mistaken in this belief.

The second resolution adopted the $1,515,856 budget without any changes. Repealing the first resolution did not repeal the budget process, just the adoption of the budget. Since all of the required notices were published and the public hearings held prior to adoption of the second resolution, there was no need to repeat those actions. The only change made at the August 21, 1997, meeting was the amount of the tax levy.

Technically, the city was not required to do anything. If it had not corrected the levy, then the Department of Revenue would have advised the assessor not to levy more than the law allowed. *See* ORS 310.070(1). The assessor would have followed that advice and the city would have

effectively levied the lesser amount without taking any action.

*Second Claim*:   The city intentionally ignored resources and levied a greater tax than was necessary.

■     The local budget law requires a municipal corporation to separately estimate its expenditures and its resources. In requiring an estimate of resources in "detail," ORS 294.361 specifically identifies most of the types of resources had or received by municipal corporations. Taxpayers' claim raises an issue not previously addressed by this court: whether the statute requires these estimates to be in good faith.

■     In prior cases, this court and the Supreme Court have held that in order to achieve "substantial compliance" with the local budget law, the municipal corporation must act in "good faith." *See Dept. of Rev. v. Umatilla County*, 10 OTR 309, 313 (1986); *Gugler v. Baker Co. Ed. Serv. Dist.*, 305 Or 548, 557, 754 P2d 891 (1988). Moreover, it is a long standing rule that every public official is bound to perform his or her duties faithfully and "for the benefit of the public." *See Coos County v. Elrod et al*, 125 Or 409, 416, 267 P2d 530 (1928). Inherent in acting for the benefit of the public is that one will not act fraudulently or in bad faith.

■■     Estimating resources involves the exercise of judgment by the members of the budget committee and the governing body. *See McBride v. Magnuson*, 282 Or 433, 437, 578 P2d 1259 (1978). Oregon case law has long held that where matters have been committed to the judgment or discretion of elected officials, the court will not interfere if that judgment or discretion is exercised in good faith in the absence of fraud. *Gurdane et al v. No. Wasco Co. P.U.D.*, 183 Or 565, 580, 195 P2d 171 (1948); *Kershaw et al v. City of Willamina et al*, 119 Or 543, 549, 250 P2d 235 (1926). Accordingly, the court will consider the evidence in light of this standard.

The city's mayor readily testified that he tried to maximize the property tax levy for 1997-98. He related that although the previous year's council evidenced an intent to levy the maximum under the law, in fact less was actually levied. Nevertheless, he based the 1997-98 proposed levy on

what was intended the previous year instead of what was actually levied, resulting in a higher levy than the six percent increase per year allowed by law. He testified that he did this because of the operating deficits in the two prior years. He also testified that he was committed to restoring the city to fiscal soundness. This evidence would indicate that he was acting for the benefit of the public and not in bad faith.

Another factor in the picture was the passage in December 1996 of Measure 47, a constitutional amendment which converted Oregon's property tax from a tax-base system to a tax-rate system.[2] Cities imposing property taxes were warned by the Department of Revenue, the assessors, and others that the new system would result in reduced tax revenues. More importantly, the tax rate established for 1997-98 would become the permanent tax rate for each taxing district. The mayor wanted to maximize the city's property-tax rate in order to protect its future position. Those facts also do not support a finding of bad faith, particularly in view of the city's recent financial experiences. In both cases, the mayor believed he was acting for the public's benefit.

Taxpayers point to specific examples they believe show the city intentionally ignored its resources and acted in bad faith. First, the budget showed a $24,000 deficit when the city "knew" it would have a $7,000 surplus. When the budget was initially proposed, the city did expect a $24,000 deficit. It was several months later, near the end of the process when the budget was being adopted, that it appeared the city might have a $7,000 surplus. Even then, this estimate was not certain and could not be readily verified. Consequently, the fact that the city did not change the amount is not evidence of acting in bad faith, especially in view of the fact that the amount was insignificant relative to the total budget.

Taxpayers also argue that a $30,000 federal grant for an additional police officer had been approved and that another officer would result in increased revenue from bails and fines. However, the city had applied for a 100 percent

---

[2] Although this measure was later revised by Measure 50, the effect was still the same.

grant but initially only 75 percent was approved. Also, even a 100 percent grant did not cover all expenses. At the time the budget was adopted, there was still sufficient uncertainty whether the city would accept the grant. In addition, it was difficult to determine how much revenue one additional officer may generate. Therefore it was appropriate not to include either amount.

*Third Claim*: There were adequate funds in the sewer funds so that no tax levy was necessary.

Taxpayers point to $20,000 in the sewer-debt service fund in support of their argument. However, due to an error in billing by the bond holders, the annual principal payment had not been paid. Therefore, what appeared to be a $20,000 surplus was in fact a past-due payment. As soon as it was discovered, the amount was paid and the account balance was reduced to zero. Similarly, assuming the budgeted depreciation of $54,000 was appropriate, there was no surplus in the sewer fund as a whole. Taxpayer Collier testified that the sewer usage fees, projected at $351,512, far exceeded the budgeted expenditures of $136,184. He therefore concluded that there were more than adequate funds without levying a tax. However, the $136,184 was only for materials and services. The budget document also estimated a need of $112,073 for personal services and $115,740 for capital outlay.

As is often the case, the taxpayers' understanding of the budget process and the state of the city's finances was not as good as it could be. It is regrettable that it requires a lawsuit for both parties to understand the other's position. Taxpayers should understand that disagreements with the judgment of their elected officials must be resolved through the ballot box, not through the courts. Only persuasive evidence of fraud or bad faith would justify the court interfering with the exercise of judgment by elected officials. In this case, the preponderance of the evidence persuades the court that the city's budget estimates were made in good faith and that the budget and tax levy were made in substantial compliance with the local budget law. Accordingly, taxpayers' Complaint is denied. Defendant to recover its costs and disbursements.