Argued and submitted April 24 at Westview High School, Portland, affirmed
June 20, 2001

Randall MANN,
Personal Representative
of the Estate of Amanda Mann,
*Appellant,*

*v.*

Craig McCULLOUGH,
an individual,
Robert G. McCullough,
an individual,
and Linda L. McCullough,
an individual,
*Defendants,*

*and*

CITY OF PORTLAND,
a municipal corporation,
*Respondent.*

9610-08041; A101144

26 P3d 856

Gordon T. Carey, Jr., argued the cause and filed the brief for appellant.

Michael Lehner argued the cause for respondent. With him on the brief was Lehner, Mitchell, Rodrigues & Sears.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

**BREWER, J.**

In this wrongful death action, plaintiff, the personal representative of the estate of Amanda Mann, appeals from a judgment in favor of defendant City of Portland. Although plaintiff makes several assignments of error, the only assignments requiring discussion assert that the trial court erred in granting a directed verdict in defendant's favor on each of plaintiff's several specifications of negligence. We affirm.

We state the facts in the light most favorable to plaintiff. *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). Amanda Mann was killed in a motor vehicle accident in March 1996. She was a passenger in a Volvo station wagon operated by Craig McCullough. The accident occurred during an evening of partying that began when McCullough took his parents' car without permission and drove to a park where he met some friends. McCullough then loaded 13 young people, including Amanda Mann, into the vehicle and drove from the park to his parents' house. The entire group stayed at McCullough's residence for about 45 minutes. Although some of the people drank vodka, McCullough testified that he drank only "one swallow" of vodka before the 13 people got back into the car to drive to another friend's house. During the drive, one of the passengers suggested that they look for some hills. McCullough said he knew where there was a good hill and headed toward Fremont Drive.

Fremont Drive is located in Northeast Portland. It runs in a generally north-south diagonal direction between Fremont Street at the north end and Russell Street at the south end. The hill in question, known locally as "Thrill Hill," begins about halfway down the street, cresting on the north at the intersection of Fremont Drive and Siskiyou Street. The road descends the hill at a 15 percent grade for about 250 feet.

McCullough previously had been a passenger in a vehicle that was driven down the hill. During the drive toward Fremont Drive, McCullough told his passengers they were going to run a hill; none of the passengers objected. As he approached the hill, he shifted into first gear about 100 yards from the crest. He accelerated through all four gears to

get as much speed as possible; the car was traveling at about 40 mph when he reached the crest. He told his passengers to hang on and started up the hill. He lost control after he crested the hill, the car rolled, and Amanda Mann was killed in the crash.

Plaintiff initiated this action against McCullough, McCullough's parents, and defendant.[1] In his amended complaint, plaintiff alleged that defendant was negligent in several respects, which were grouped generally into two categories. First, plaintiff alleged that defendant was negligent in making its decisions regarding traffic management and control devices on Fremont Drive between Fremont and Siskiyou streets. Second, plaintiff alleged that defendant was negligent in failing to warn the public of the dangers of speeding on the hill along Fremont Drive. In its answer, defendant affirmatively pleaded that the acts of negligence alleged by plaintiff required the exercise of discretionary judgment for which defendant was immune from liability.

The evidence showed that the traffic management decisions that plaintiff challenges were made pursuant to defendant's Neighborhood Traffic Management Program (NTMP). The NTMP, adopted by the Portland City Council in 1984, was intended to address the effect of traffic on Portland neighborhoods. According to the written program document, one of its purposes was to "protect the livability of Portland's established residential neighborhoods." When the city council adopted the NTMP, it assigned to the Portland Bureau of Traffic Management (the Bureau) the responsibility for prioritizing citizen requests; studying and evaluating proposed plans; and determining, by test installations and other means, the effectiveness of various proposals to satisfy defendant's traffic management objectives and policies. Because of budgetary limitations, defendant was able to undertake only about four projects per year.

The written NTMP document set forth specific objectives and policies that must be considered in devising a plan

---

[1] McCullough and his parents are not parties to this appeal; thus, when we refer to "defendant," we refer only to the City of Portland.

to address traffic problems identified by neighborhood residents. Among those objectives and policies were the mitigation of traffic effects on residential neighborhoods, the promotion of safe conditions for motorists, bicyclists and pedestrians, the efficient use of resources by prioritizing traffic management requests, and the employment of traffic control devices and traffic management devices. A stated policy of the NTMP required the planning and design of traffic management devices "in keeping with sound engineering and planning practices." The NTMP required the Bureau, at the conclusion of its study, to "prepare a report and recommendation along with proposed findings for the [c]ity [c]ouncil outlining the process followed and the reasons for the recommendations." The plan vested ultimate responsibility in the city council for approving or rejecting NTMP recommendations.

The initial manager of the NTMP was Janice Newton, an employee of the Bureau. Newton was not a licensed traffic engineer, but she had taught classes in traffic management to engineering students at Oregon State University. Newton was the manager of the program when most of the challenged improvements on Fremont Drive were selected and installed. Although she participated in the challenged improvement decisions in this case, each of the decisions was made with the advice of defendant's traffic engineers.

Newton testified about the decision-making process that was followed in connection with the improvements. On two separate occasions in the 1980s, based on input from citizens and recommendations from the Bureau, the city council authorized traffic control improvements on Fremont Drive in order to address neighborhood concerns about speeding and traffic volume. The street was unusually wide for a residential neighborhood and regularly was used as a shortcut by nonresident motorists. After gathering information, including accident history data for the area, the Bureau designated the Fremont Drive project as a "Type 2" project under the NTMP and described it as follows:

"Type 2 - Neighborhood Circulation Projects
- more widespread problem (speed or through traffic, use of a local street as a shortcut)
- requests prioritized city-wide
- higher data gathering and analysis requirements
- solutions may include circulation changes such as traffic circles, or diverters
- neighborhood support required through petitions and balloting
- Council approval required for any street alterations"

From 1984-86, the Bureau considered several options to address the problems of speeding and traffic volume, including narrowing Fremont Drive on the hill, placing diverters on the hill, and placing a traffic circle in the intersection of Fremont Drive and Siskiyou Street. The Bureau rejected the street-narrowing alternative because the Bureau believed it would be expensive and ineffective. It also rejected the notion of diverters or other blocking devices because it concluded that such measures would create additional traffic hazards. Finally, the Bureau rejected a traffic circle because it concluded that a circle would block visibility and create conflict points for turning movements in the intersection. Ultimately, the Bureau recommended, and the city council approved by ordinance, the installation of a center island at the Fremont-Siskiyou intersection at the top of the hill and a traffic circle and another center island on Fremont Drive at two intersections to the north of Siskiyou Street.

In 1989, the Bureau again reviewed the NTMP plan for the area because follow-up studies revealed a continuing need to control the speed of traffic on Fremont Drive. In order to address the speeding problem further, the Bureau recommended the construction of a curb extension to sharpen the angle of entry from Fremont Street onto Fremont Drive. The city council approved that improvement by ordinance, and the extension was constructed as authorized.

Plaintiff's expert witness testified that, despite the measures taken, defendant had not done enough to control speed on Fremont Drive in the hill area. He suggested that

defendant should have installed more traffic devices—in particular, a traffic circle at the Fremont-Siskiyou intersection.

■       At the conclusion of plaintiff's case, the trial court granted defendant's motion for a directed verdict with respect to each of plaintiff's specifications of negligence against defendant. In his first and second assignments of error, plaintiff asserts that the court erred in granting a directed verdict—based on discretionary immunity—on those specifications in which plaintiff alleged that defendant was negligent in making its decisions with respect to traffic management and control devices on Fremont Drive. If the material historical facts as to defendant's actions are not disputed, as is the case here, whether defendant is subject to discretionary immunity is a question of law. *Hutcheson v. City of Keizer*, 169 Or App 510, 518, 8 P3d 1010 (2000).

■       Plaintiff argues that the Bureau performed nondiscretionary acts in choosing among alternative strategies to address traffic problems on Fremont Drive and in failing to effect a cure for those problems. As it did at trial, defendant relies on ORS 30.265(3), which provides, in part:

> "Every public body and its officers, employees and agents acting within the scope of their employment or duties * * * are immune from liability for:
>
> "* * * * *
>
> "(c)   Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

Defendant argues that the traffic management and control decisions made by the city council, based on recommendations from the Bureau, involved the exercise of discretionary judgment in street design and traffic management decisions and, accordingly, qualified for immunity under ORS 30.265(3)(c).

Plaintiff replies that defendant's position cannot be squared with controlling case law, particularly *Stevenson v. State of Oregon*, 290 Or 3, 619 P2d 247 (1980). In *Stevenson*, also a wrongful death action, the trial court denied the state's motion for a directed verdict on the plaintiff's claim that the arrangement and design of traffic signal lights at a highway

intersection were deceptive so that motorists were misled to believe that they had a green light when in fact they did not. The Supreme Court upheld that ruling, explaining that a public body is not immune from liability for its negligence under ORS 30.265(3) merely because the challenged decisions involved highway planning or design. Instead, the court said that discretion that provides immunity involves

> "room for policy judgment, or the responsibility for deciding the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued. It involves the delegated responsibility for assessment and ranking of the policy objectives explicit or implicit in the statute and for the judgment that one or more of these objectives will be served by a given action." *Id.* at 10 (internal citations and quotations omitted).

The court stated that a decision is more likely to be discretionary when made at a higher level of government, or, if delegated, when the person making the decision was assigned responsibility for making policy choices as distinguished from "the routine decisions which every employee must make in every action he or she takes." *Id.* at 14. Applying those principles to the facts in that case, the court held:

> "The case before us is one in which the nature of the underlying decision by highway division employees— whether to provide special shielding on the highway traffic lights or to make other changes to eliminate the alleged misleading condition—*might or might not have been made in the exercise of governmental discretion.*
>
> "The burden is on the state to establish its immunity. In some instances, the nature of the function alone is sufficient to establish immunity. *In other instances, evidence of how the decision was made is necessary.* * * *
>
> "The state has argued that there is immunity in this case because the arrangement of the trafffic lights and the design of their shielding were appropriate matters for engineering judgment. *It may be conceded that this is so, but there is nothing in the record to suggest that the responsible employes of the highway division made any policy decision of the kind we have described as the exercise of governmental discretion.*" *Id.* at 15-16 (emphasis added).

Plaintiff's reliance on *Stevenson* is misplaced. Unlike in *Stevenson*, in this case there was undisputed evidence as to how the decisions to design and integrate traffic management and control devices were made on Fremont Drive. When the city council adopted the NTMP, it assigned to the Bureau the responsibility for prioritizing citizen requests, studying and evaluating proposed plans, and determining, by test installations and other means, the effectiveness of various proposals to satisfy defendant's traffic management objectives and policies. The evidence showed that the Bureau followed that protocol with respect to the Fremont Drive improvements. However, the final decisions with respect to the selection of the relevant traffic management and control devices for those improvements were made by the city council, as required by the NTMP. Further, the Bureau and the city council did not simply execute a command to create a safe street environment; they were required to make strategic choices about how best to fulfill the various policies and objectives of the NTMP. They had to consider whether and how various options would satisfy those policies and objectives. Although the city council's decisions were based on recommendations by the Bureau, those recommendations involved precisely the sort of delegated responsibility that earmarks the exercise of discretionary judgment.

■ Plaintiff's alternative theory appears to be that defendant had a duty to *succeed* in executing a traffic management strategy that would prevent accidents.[2] That assertion is incorrect. Immunity is not defeated merely because defendant's choice of traffic management and control devices did not prevent the tragic loss of life in this case or, for that matter, because plaintiff's expert testified that another strategy likely would have been more effective in reducing the incidence of speeding. *See Garrison v. Deschutes County*, 162 Or App 160, 167-68, 986 P2d 62 (1999), *rev allowed* 329 Or 650 (2000) (holding that, in granting summary judgment, the trial court's disregard of the plaintiff's proffered expert testimony was not erroneous, because that "testimony would go

---

[2] Specifically, plaintiff asserts in his reply brief that, "Assuming, *arguendo*, that defendant City's decisions concerning the Fremont Drive improvements were immune, defendant City is still liable if the street was unsafe after the improvements."

not to the question of whether defendant's decision took safety into account but, rather, would go to the question of the quality of the decision").

In *Garrison*, the plaintiff argued that the defendant county was not entitled to immunity for failing to install a safety barrier or warning signs at a solid waste transfer station. We disagreed with the plaintiff's contention that discretionary immunity could not shield a public body from its failure to effect a cure in executing a duty of due care:

> "[A]s long as the decision-making body has acknowledged and assessed the various risks to public safety and has made its decision based on its understanding of those risks in light of its objectives, the body cannot be held liable if it should turn out that it made the wrong decision." *Id.* at 167.

Our conclusion in *Garrison* is consistent with ORS 30.265(3), which provides immunity for "the performance of or the failure to exercise or perform a discretionary function or duty, *whether or not the discretion is abused.*" (Emphasis added.) Plaintiff in effect accuses defendant of abusing its discretion in making traffic management decisions with respect to Fremont Drive. Because, as we have held, defendant's decisions were discretionary, it is immaterial to the defense of immunity whether they may have been imperfect on their merits. The trial court did not err in granting a directed verdict as to the specifications of negligence challenging defendant's decisions concerning traffic management and control devices on Fremont Drive.

■ We turn to plaintiff's third assignment of error, in which he asserts that the trial court erred in granting a directed verdict on his specification alleging that defendant was negligent in failing "to post signs to warn traffic of the dangers of speeding on 'Thrill Hill.'" According to plaintiff, a public body's failure to warn of a danger is not discretionary and, thus, is not immune under ORS 30.265(3). In support of that proposition, plaintiff relies on *Miller v. Grants Pass Irrigation*, 297 Or 312, 686 P2d 324 (1984), in which the Supreme Court held:

> "If there is a legal duty to protect the public by warning of a danger or by taking preventing measures, or both, the choice of means may be discretionary, but the decision

whether or not to do so at all is, by definition, not discretionary." *Id.* at 320.

The parties disagree about whether defendant's choice of warning signs involved a discretionary decision, but the trial court did not grant defendant's motion for a directed verdict on that ground.[3] Instead, the court determined that there was no evidence that any failure to warn caused the accident in this case. Plaintiff disagrees, relying on McCullough's testimony that it was not his purpose in running the hill to get the car airborne. Plaintiff's emphasis on that evidence is understandable, but it is beside the point. There was no evidence that an additional warning about speed would have deterred McCullough and his passengers from running the hill. The undisputed evidence showed that McCullough and his passengers intended to run the hill at an excessive speed, in effect, for recreational purposes. His running the car through its gears before cresting the hill at 40 miles per hour provides unquestionable evidence of that fact. Faced with a similar issue in *Garrison*, we held:

"The issue is not whether plaintiffs were comparatively negligent, which is indeed a jury question, but, rather, whether the presence of a warning would have had any additional effect on plaintiffs' knowledge of the risk. In other words: was there a causal link between the absence of a warning and [the injured plaintiff's] injuries?" *Garrison*, 162 Or App at 168.

We noted that the record contained undisputed evidence that the plaintiffs were aware of the risk of harm at issue in that case and concluded:

"On this record, it is impossible to see how a warning sign would have altered plaintiffs' behavior in any way or how the absence of a warning exposed plaintiffs to any greater risk of harm than if they had been warned." *Id.* at 169.

---

[3] A "Steep Hill" warning sign was in place near the crest of the hill at the time of the accident. Defendant contends that its decision to install that sign, as opposed to an advisory speed warning sign, was discretionary. The parties have not drawn our attention specifically to any evidence showing when the sign was installed, who made the decision to install it, or how the decision was made. In light of our disposition of this assignment of error, we need not consider whether defendant proved that its choice of warning signs was discretionary.

Here, too, there is no dispute that McCullough knew the hill, that he previously had been a passenger in a vehicle that had run it, and that he and his passengers intended to run it for the recreational experience of speed when the accident occurred. Thus, there was no evidence that the failure to provide additional posted speed warnings caused Amanda Mann's death.

Plaintiff's remaining assignments of error do not require discussion.

Affirmed.