Argued March 10, reversed and remanded May 23, 1978

McBRIDE, *Appellant,*
*v.*
MAGNUSON, *Respondent.*
(TC 420 089, SC 25344)
578 P2d 1259

Michael E. Kohlhoff, Portland, argued the cause and filed a brief for appellant.

Edward H. Warren, of Hershiser, Mitchell & Warren, Portland, argued the cause for respondent. With him on the brief was Bruce L. Mowery.

LINDE, J.

## LINDE, J.

■ Plaintiff brought an action against defendant, a police officer assigned to the Youth Division of the Portland Police Bureau, for interference with plaintiff's right to custody of her eight-month-old son. Her complaint alleged as one "cause of action" that defendant "intentionally, maliciously and without probable cause, caused [her son] to be placed in protective custody," and as a second "cause of action" that defendant was negligent in making an investigation and report of burns suffered by the child, thereby causing him to be taken into protective custody and plaintiff to be subjected to judicial proceedings. Although the complaint purported to state two causes of action, it actually stated a single cause of action with several counts. Defendant demurred on the ground that the complaint failed to state facts sufficient to constitute a cause of action, ORS 16.260(6), specifically asserting that defendant had an absolute immunity from civil liability when acting in the official capacity appearing on the face of the complaint. The trial court sustained the demurrer, and plaintiff appeals from the judgment entered on the demurrer. Because the complaint alleges facts which, if proved, would establish plaintiff's right to recover for an intentional, malicious and unjustified interference with custody of her child, we conclude that the demurrer should have been overruled. *See Shires v. Cobb,* 271 Or 769, 770 n.1, 534 P2d 188 (1975).[1]

■ Although in the past a parent had a legally protected interest in the custody of a child only on the theory that the parent was entitled to the child's services, that theory long ago turned into one of the fictions of pleading and was eventually abandoned. The history was traced in a leading opinion of the New

---

[1]Since the demurrer should have been overruled on one of plaintiff's theories, we do not reach the remaining theories of the complaint. *See Chaney v. Fields Chevrolet Co.,* 264 Or 21, 27-28, 503 P2d 1239, 59 ALR3d 1199 (1972); *Rich v. Tite-Knot Pine Mill,* 245 Or 185, 189, 421 P2d 370 (1966); ORS 16.270.

York Court of Appeals, *Pickle v. Page,* 252 NY 474, 169 NE 650 (1930), *annotated in* 72 ALR 842 (1931), which affirmed a tort recovery against a sheriff who had taken a five-year-old boy from the custody of his adoptive parents at the behest of his natural mother. *Pickle v. Page* was followed by the Supreme Court of Michigan in *Oversmith v. Lake,* 295 Mich 627, 295 NW 339 (1940), on facts similar to those pleaded in this case, when the court affirmed a father's recovery of damages against a county welfare agent and a juvenile officer who took plaintiff's children into custody upon an allegation of neglect. We have no doubt that a parent's right to the custody of a child is equally protected against unjustified interference also in Oregon. *See* ORS 163.245, 419.519; *cf. McEvoy v. Helikson,* 277 Or 781, 562 P2d 540 (1977). Of course, the interference may be justified under the statutes specifically authorizing such action for the protection of children, ORS 419.569 and (with respect to investigations and reports) ORS 418.745-418.775 and perhaps also apart from statute, *see* Restatement of Torts 2d, § 700, Comment *e.* But that is a matter of defense rather than demurrer. We turn, therefore, to defendant's claim of absolute immunity from liability on the facts pleaded in the complaint.

■■ Defendant claims immunity on the premise that she was necessarily engaged in a "discretionary" official act within the meaning of *Jarrett v. Wills,* 235 Or 51, 383 P2d 995 (1963), and similar decisions. However, her authority to exercise discretion does not appear on the face of the complaint or in ORS 418.745-418.775. Of course, making an investigation and a report involves judgment and evaluation of factual circumstances. Many officers or employees carrying out the functions entrusted to them by others must frequently assess facts and choose how to act or not to act upon them. But not every exercise of judgment and choice is the exercise of discretion. It depends on the kind of judgments for which responsibility has been delegated to the particular officer.

Discretion, as this court has noted in other contexts, involves "room for policy judgment," *Smith v. Cooper,* 256 Or 485, 502, 475 P2d 78, 45 ALR3d 857 (1970), *quoting Dalehite v. United States,* 346 US 15, 36 (1953), or the responsibility for deciding "the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued," *Antin v. Union High School Dist. No. 2,* 130 Or 461, 469, 280 P 664 (1929). It involves the delegated responsibility for "assessment and ranking of the policy objectives explicit or implicit in the statute" and for the judgment that one or more of these objectives will be served by a given action, *Dickinson v. Davis,* 277 Or 665, 673, 561 P2d 1019 (1977). In other words, insofar as an official action involves both the determination of facts and simple cause-and-effect relationships and also the assessment of costs and benefits, the evaluation of relative effectiveness and risks, and a choice among competing goals and priorities, an official has "discretion" to the extent that he has been delegated responsibility for the latter kind of value judgment.

The kind of delegated authority that involves discretion is illustrated by the cases. In *Jarrett v. Wills, supra,* the superintendent of a state institution for mentally deficient persons was held immune from tort liability for granting leave to an inmate because the relevant statute and regulations in broad terms delegated that responsibility to him. In *Watts v. Gerking,* 111 Or 641, 222 P 318, *rev'd on rehearing,* 228 P 135 (1924), a divided court accorded immunity from an action for malicious prosecution to a district attorney. The Court of Appeals has recognized the tort immunity of the director of the state department of environmental quality for administrative orders issued by him, *Chemical Waste Storage and Disposition, Inc. v. Day/Mann,* 14 Or App 515, 513 P2d 1193, *review denied* (Or 1973), and of a department head and the personnel director of the University of Oregon in

making personnel recommendations, *Donahue v. Bowers/Steward,* 19 Or App 50, 526 P2d 616, *review denied* (Or 1974). On the other hand, tort claims for false arrest, false imprisonment, and malicious prosecution have been brought and upheld against police officers without any claim of immunity. *Christ v. McDonald,* 152 Or 494, 52 P2d 655 (1935); *cf. Rogers v. Hill,* 281 Or 491, 576 P2d 328 (1978). Although policy discretion is more likely to be found at or near the level of political responsibility, it is not simply a matter of the defendant's office but of the scope and nature of the choices delegated to him. Thus a judge was denied tort immunity when he issued an arrest warrant without having received a sworn complaint as required by law, *Utley v. City of Independence,* 240 Or 384, 402 P2d 91 (1965), while employees as well as members of the highway commission were immune in making a broadly delegated range of choices in constructing a highway. *Smith v. Cooper, supra,* distinguishing *Ogle v. Billick,* 253 Or 92, 453 P2d 677 (1969).

By these criteria, defendant did not have immunity at the time this complaint was filed, and the demurrer should have been overruled.[2]

Reversed and remanded.

---

[2]The effect of chapter 609, Oregon Laws 1975, and chapter 823, Oregon Laws 1977, and of ORS 418.762 and their compatibility with article I, section 10, of the Oregon Constitution if applied to this action are not before us on this appeal, and we express no opinion thereon.