Submitted November 20, 1978, affirmed February 6, 1979

MORRIS, *Appellant,*
*v.*
OREGON STATE TRANSPORTATION
COMMISSION et al, *Respondents.*
(No. 101262, CA 11197)

590 P2d 260

Gatti, Ward & Gatti, Salem, filed the brief for appellant.

James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and Mary Deits, Assistant Attorney General, Salem, filed the brief for respondents.

Before Schwab, Chief Judge, and Lee, Richardson, and Joseph, Judges.

LEE, J.

**LEE, J.**

In this action plaintiff alleged that the defendants' negligent maintenance and control of a traffic control device proximately caused her automobile accident and the resulting injuries for which she seeks money damages.

Plaintiff was a passenger in a car which was travelling north on 12th street in Salem, Oregon, when an approaching train caused the traffic control signals along that street to immediately change from green to red without a yellow interval. Plaintiff alleged that this sudden change caused the rear end automobile collision in which she was injured.

Plaintiff filed an original and three amended complaints. Plaintiff contends that the court erred (1) in sustaining a demurrer to plaintiff's first amended complaint on the ground that the design of the traffic signal was a discretionary determination for which public bodies and their officers, employes and agents are immune from liability, ORS 30.265(3)(c),[1] and (2) in granting summary judgment on the third amended complaint on the basis of immunity. We consider the immunity issue first because resolution of that matter effectively disposes of the other assignments of error.

A public body is not liable for negligently performing a discretionary function, but is liable for negligently performing a ministerial function. *Smith v. Cooper,* 256 Or 485, 495, 475 P2d 78, 45 ALR3rd 857 (1970). The discretionary act exception to the general waiver of governmental immunity contained in the Tort Claims Act is intended to preclude judicial review

---

[1] ORS 30.265(3)(c) provides:

"(3) Every public body and its officers, employes and agents acting within the scope of their employment or duties are immune from liability for:

"* * * * *

"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

of certain political decisions which are expressly committed to other branches of government. *Moody v Lane County,* 36 Or App 231, 233, 584 P2d 335 (1978). Therefore, application of the discretionary act exception requires examination of the statutes and regulations which delegate responsibility as well as an assessment of public policy considerations which enter into the governmental decision. *McBride v. Magnuson,* 282 Or 433, 437, 578 P2d 1259 (1978); *Moody v. Lane County, supra* at 234.

In 1975, the legislature enacted ORS 487.853, which provides:

> "The Oregon Transportation Commission shall adopt a manual and specifications of uniform standards for traffic control devices consistent with the provisions of this chapter and ORS chapter 483 for use upon highways within this state."

The authority of the Oregon Transportation Commission (Commission) over traffic control signals is set forth in ORS 487.850(2) as follows:

> "Except at railroad-highway grade crossings,[2] the commission is authorized to determine the character or type of traffic control signals to be used * * * at places where the commission deems necessary for the safe and expeditious control of traffic. *So far as practicable,* all such traffic control signals shall be uniform as to type and location. * * *" (Emphasis supplied.)

Thus, the applicable statutes do not absolutely require all traffic control signals to conform to the uniform standards adopted by the Commission.

■ The relevant regulations also leave room for the exercise of discretion. With minor exceptions, the Commission adopted the Manual on Uniform Traffic Control Devices for Streets and Highways (Manual)

---

[2]There appears to be some question whether the Public Utility Commission and the Oregon Transportation Commission have joint jurisdiction over traffic control signals which are located at railroad-highway grade crossings. Neither party raised this issue.

published by the United States Department of Transportation. The general provisions in Part I of the Manual clearly state the Commission's intent:

> "The decision to use a particular device at a particular location should be made on the basis of an engineering study of the location. *Thus, while this Manual provides standards for design and application of traffic control devices, the Manual is not a substitute for engineering judgment.* It is the intent that the provisions of this Manual be standards for traffic control devices installation, but not a legal requirement for installation." (Emphasis supplied.)

Therefore, if a decision to use certain traffic control devices at railroad-highway grade crossings concerns design and application, then the Manual may guide but may not control the judgment of a traffic engineer.

Plaintiff asserts that defendants must follow rule 4B-21 of the Manual which states in part:

> "When the green indication is preempted by train operation, a yellow change interval *must* be inserted * * *." (Emphasis supplied.)

Generally, the word "must" would be construed to confer a mandatory duty; however, as explained above, if rule 4B-21 concerns the design and application of a traffic control signal, then the traffic engineer may exercise his judgment.

The words *design* and *application* are words of art which are explained in the Manual as follows:

> "*Design* of the device should assure that such features as size * * * shape * * * and lighting * * * are combined to draw attention to the device * * *. In the design of a device, minor modifications of specified design elements may be necessary under certain conditions, provided that the essential appearance characteristics are met.
>
> "* * * * *
>
> "*Operation* or *application should assure that appropriate devices* and related equipment be installed to *meet the traffic requirements at a given location* * * *." (Emphasis supplied.)

[ 335 ]

In the instant case, plaintiff's pleadings and an affidavit submitted by the traffic engineer confirm that the signal was operating as intended and that the preemption feature was not a malfunction. Thus, the decision to use traffic control devices which immediately change from green to red when preempted by a train concerned the design and application rather than the maintenance of the device and rule 4B-21 is not mandatory.

Having determined that the relevant statutes and rules permit the exercise of discretion, we must assess the public policy considerations which entered into the governmental decision. An affidavit submitted by the traffic engineer states:

"* * * It was and is judged that an immediate change from green to red is required in the interest of the safety of vehicles which may be stopped on the tracks when a train approaches.

"* * * It was not judged that a sign warning that the green light might * * * change suddenly from green to red without a yellow sequence was advisable and such a sign was not erected and will not be erected. Matters considered were: that such signs would have to be erected prior to each intersection, that such signs because of necessary wordage and size would be distracting to the traveling public; that generally signs warning of only occasional occurrences are ineffective; that there was little likelihood of danger to any parties traveling within the speed limit and at a safe distance behind preceding autos; and that the erection and maintenance of such special signs would consume money which might be better utilized elsewhere."

In addition it should be noted that the traffic control signal in question was installed in 1956 and at that time there was no standard stating that a yellow interval should be used in traffic control signals at railroad-highway grade crossings. Nor do the statutes or regulations provide a schedule for conforming to the standards in the Manual. Therefore the decision whether to modify existing signals to new standards

[ 336 ]

involves public policy considerations such as the availability of funds, public acceptance and order of priorities, which should be decided by the Commission, and are not appropriate subjects of judicial review. *See Moody v. Lane County, supra* at 234.

■   In view of our holding that the operation or application of the traffic signal constitutes the exercise of a discretionary function for which public bodies are immune, we do not reach plaintiff's other assignments of error.

Affirmed.