Argued and submitted December 15, 1998, affirmed August 4, 1999, petition for review allowed February 8, 2000 (329 Or 650)

# Gary GARRISON
## and Heather Garrison,
### *Appellants,*

*v.*

## DESCHUTES COUNTY,
### *Respondent.*

## (97-CV-0397-ST; CA A101360)

986 P2d 62

W. Eugene Hallman argued the cause and filed the briefs for appellants.

Gregory P. Lynch argued the cause for respondent. With him on the brief were Stanley D. Austin and Hurley, Lynch & Re.

Before Edmonds, Presiding Judge, and Armstrong and Kistler,* Judges.

ARMSTRONG, J.

---

* Kistler, J., *vice* Warren, P. J., retired.

## ARMSTRONG, J.

Plaintiffs appeal from the dismissal of their case after the trial court had granted summary judgment to defendant on all counts of their amended complaint. We affirm.

On review of a summary judgment, we review the facts in the light most favorable to the nonmoving party, in this case plaintiffs, to determine if the movant is entitled to judgment as a matter of law. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). Gary Garrison was severely injured in a fall at the Fryrear transfer station, which is owned and operated by Deschutes County. The transfer station was designed and built using "Z-wall construction," which consists of a concrete upper slab with a 14.5-foot retaining wall that drops to a concrete lower slab. The design allows persons using the transfer station to back their vehicles onto the upper slab and dump their garbage into semi-truck trailers that have been placed on the lower slab. There is a seven-inch railroad tie at the edge of the upper slab that serves as a barrier to warn drivers not to back their vehicles any further. At the time of Garrison's fall, there were no other barriers or fences on the upper slab, and there were no signs warning users of the danger of falling from the upper to the lower one.

The design and operating method of the transfer station were chosen and implemented by Larry Rice, the public works director for Deschutes County, and Al Driver, the director of solid waste operations for the county. The design engineer was Tom Blust, who worked under the supervision of Dave Horning. The Deschutes County Board of Commissioners had delegated the design and operation decisions for the transfer station to Rice and Driver. In the process of adopting the design for the transfer station, Rice and Driver considered other design options, including installing a fence, railing or other barrier at the edge of the upper slab, and other operating systems, including having patrons dump their refuse on the upper slab so that it later could be pushed off the slab and into the trailers below by transfer station employees, but determined that those options presented their own safety problems as well as economic disadvantages.

On the day that Garrison was injured, he and his wife had driven to the transfer station in their pickup with a load of refuse. Both had been to the transfer station before and, as at those earlier times, Garrison backed the pickup up to the railroad tie barrier and lowered the tailgate. When the tailgate was lowered, it protruded out over the edge of the upper slab. Both Garrison and his wife were aware of the distance of the drop from the upper to the lower slab and had discussed the importance of being careful so as not to fall. Garrison stood in the back of the pickup and threw the refuse over the edge and into the trailer below. When he was finished, he grabbed a lumber rail on the back of the pickup and attempted to swing out onto the pavement of the upper slab. In doing so, he fell to the pavement of the lower slab, suffering severe injuries to his face, head, arms and chest.

Plaintiffs brought this action seeking damages for personal injury and loss of consortium. They alleged in their amended complaint that defendant was negligent "(a) [i]n failing to maintain a premises which is reasonably safe from dangers by placing fences, barriers, or other protective devices next to the wall to prevent individuals from falling; [and] (b) [i]n failing to protect invitees from unreasonably dangerous conditions on the premises by posting signs or other warning devices warning of the immediate drop off." They further alleged that defendant knew or should have known of the dangers and conditions described in the complaint. Defendant moved for summary judgment. On plaintiffs' first theory of negligence, defendant asserted that it was immune from liability under the doctrine of discretionary immunity, because the transfer station design was the product of "a policy judgment made by a person or body with government discretion." On plaintiffs' second theory, defendant asserted that it had no duty to warn of the danger of falling from the upper to the lower slab because the danger was not concealed and the risk of harm was known and understood by plaintiffs. In response to defendant's motion, plaintiffs stated that they had retained an expert witness who would testify that defendant's design and operation of the transfer station were unreasonably dangerous. Plaintiffs also filed an affidavit to that effect.

The trial court granted defendant's motion for summary judgment but allowed plaintiffs to file a second amended complaint. In that complaint, plaintiffs repeated their first two specifications of negligence and added a third, alleging that defendant was negligent "[i]n failing to protect invitees from unreasonably dangerous conditions on the premises by adopting an operating plan which required the invitees to back their pick up trucks to the edge of the wall in order to dump." Defendant again moved for summary judgment and plaintiffs again responded with an affidavit stating that they would present expert testimony that would create a question of fact as to each of the three specifications of negligence. The trial court again granted defendant's motion for summary judgment and entered the judgment from which plaintiffs appeal.

In their first assignment of error, plaintiffs contend that the trial court erred in granting summary judgment to defendant on plaintiffs' first and third specifications of negligence because (1) there was no evidence that the decision to adopt the transfer station design and operation was made by a politically accountable governing body, and (2) defendant had a nondiscretionary duty to eliminate the unreasonably dangerous condition created by the transfer station's design. Plaintiffs contend that, even if the design decision was made at the proper level of authority, the evidence in the summary judgment record showed that defendant had chosen, for economic reasons, not to exercise reasonable care. We conclude that the trial court did not err.

■ ORS 30.265(3)(c) provides, in relevant part:

> "Every public body and its officers, employees and agents acting within the scope of their employment or duties * * * are immune from liability for * * * any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

To be immune, the decision at issue must involve a policy judgment by a person or body with governmental discretion, not simply a routine decision made by an employee in the course of day-to-day activities. *Mosley v. Portland School District No. 1J*, 315 Or 85, 89, 843 P2d 415 (1992). Plaintiffs

argue that there is no evidence that Rice and Driver were persons with governmental discretion and, therefore, that there is no basis to find that their design and operation decisions are immune from liability. *See Little v. Wimmer*, 303 Or 580, 588, 739 P2d 564 (1987) ("[I]n the absence of evidence that the decision was made as a policy judgment by a person or body with governmental discretion, the decision is not immune from liability[.]"). We disagree with plaintiffs' reading of the evidentiary record.

■    Defendant states, and plaintiffs do not dispute, that the Deschutes County Commission is the highest ranking decision-making body in the county. Defendant further states, and plaintiffs concede, that the task of adopting a design and operating system for the transfer station was delegated to Rice and Driver by the commission. As such, Rice and Driver stood in the place of the commission as decision makers in regard to the design and operation of the transfer station, and any decision by Rice and Driver was a decision attributable to the commission. Moreover, the type of decision that the commission delegated to Rice and Driver was precisely the type of decision normally considered immune from liability. It involved not merely "the determination of facts and simple cause-and-effect relationships," *McBride v. Magnuson*, 282 Or 433, 437, 578 P2d 1259 (1978), but, rather, a policy judgment about competing policy objectives, including an assessment of the costs and benefits of competing courses of action. *Id.* Accordingly, the fact that the ultimate decision about which design to adopt was made by Rice and Driver and not by the commission does not, in itself, prevent defendant from invoking immunity.

■    However, that conclusion does not end our analysis of plaintiffs' first assignment of error. Plaintiffs also claim that, even if the decision was made at the proper level of authority, defendant still is not immune from liability, because the decision itself was not within the permissible range of decisions available to defendant. Plaintiffs contend that, as a landowner, defendant owed a duty of care to plaintiffs as business invitees.[1] According to plaintiffs, that duty included the duty to maintain a reasonably safe premises and

---

[1] Defendant does not dispute plaintiffs' status as business invitees.

to protect invitees from unreasonably dangerous conditions. In their view, defendant did not have discretion to take actions that would violate that duty. Hence, discretionary immunity would not insulate defendant against liability for designing and operating an unreasonably dangerous facility.

In support of their argument, plaintiffs cite *Miller v. Grants Pass Irrigation*, 297 Or 312, 686 P2d 324 (1984). In *Miller*, the Supreme Court explained:

> "If there is a legal duty to protect the public by warning of a danger or by taking preventing measures, or both, the choice of means may be discretionary, but the decision whether to or not to do so at all is, by definition, not discretionary.
>
> "This is true whether the duty derives from statutory or from common law. If one were to imagine a statute that requires every operator of a dam to take such precautions to avoid predictable risks of harm as may be reasonable under the conditions of the site and its foreseeable uses, the operator would have a nondiscretionary duty *at least to examine what to do*. The same is true if the facts give rise to a corresponding duty at common law. The law itself has made that much of a policy choice. *When different precautions might satisfy this duty, however, the choice of which one to use may be discretionary*."

*Id*. at 320 (emphasis added). The court went on to conclude that, although the irrigation district did not have discretion under ORS 30.265(3)(c) to choose to ignore a safety risk, it did have discretion to choose among methods of addressing it. Furthermore, the court held that if, in weighing competing policy issues, the district had failed to choose a means by which to address the safety risk before an injury had occurred, it nevertheless would be immune, because it would not have wholly disregarded or declined to address its duty. *Id*. at 321.

■■ Plaintiffs argue that defendant, by choosing not to install a barrier or warning signs, disregarded its duty of care and, therefore, under *Miller*, could not claim immunity. We disagree. Although there is language in *Miller*, as well as in later cases such as *Fazzolari v. Portland School District No. 1J*, 303 Or 1, 22 n 20, 734 P2d 1326 (1987), and *Mosley*, 315

Or at 92, that at first glance would appear to support plaintiffs' position, we conclude that the import of those cases is simply that a governmental official or body that makes a discretionary policy decision must, in making the decision, *consider* the risks to public safety inherent in the decision and include a consideration of those risks in the overall assessment of the costs and benefits of the competing choices. The distinction is between, on the one hand, failing to address at all the duty to consider safety and, on the other, addressing the issue but, in doing so, possibly making the wrong choice. Whereas the first action would not be immune, the second would. Indeed, that is the purpose of discretionary immunity, to allow a governmental body to choose between competing policy objectives in the face of various risks. Accordingly, as long as the decision-making body has acknowledged and assessed the various risks to public safety and has made its decision based on its understanding of those risks in light of its objectives, the body cannot be held liable if it should turn out that it made the wrong decision.

In this case, Rice and Driver considered alternative designs and operational methods for the transfer station. In an affidavit submitted as part of the summary judgment record, Driver stated that he and Rice had considered including a fence, railing, or other barrier at the end of the upper slab. They determined that such an addition would be more of a hazard than a safety feature, in addition to being more costly for the county. Plaintiffs do not dispute that such consideration was given, but, rather, argue that it was inappropriate for Rice and Driver to consider economic factors in reaching their decision. We disagree. Although their consideration of economic factors may have led Rice and Driver to make an ill-advised choice among competing options, that consideration does not strip their decision of immunity, so long as they exercised their duty at least to consider the safety of the public.

As for plaintiffs' argument that the trial court erred in granting summary judgment to defendant even though plaintiffs were prepared to produce expert testimony as to the unreasonable danger of defendant's ultimate design choice, the above analysis applies. That testimony would go not to the question of whether defendant's decision took

safety into account but, rather, would go to the question of the quality of the decision. Again, that is precisely what immunity is designed to address. If governmental bodies always made perfect choices, then there would never be a need to invoke immunity. The trial court did not err in disregarding the expert testimony, because it would have had no effect on the ultimate issue of immunity. Accordingly, the trial court did not err when it concluded that, as to plaintiffs' first and third specifications of negligence, defendant was immune from liability.

■     In their second assignment of error, plaintiffs argue that the trial court erred in concluding, as a matter of law, that defendant was not liable for a failure to warn of the danger of falling from the upper slab because the danger to plaintiffs was open and obvious. Plaintiffs argue that any knowledge that they may have had of the danger presented by the design of the transfer station would simply go to the issue of comparative fault and, therefore, presented a question for the jury. *See Woolston v. Wells*, 297 Or 548, 556, 687 P2d 144 (1984) (instructing jury that defendant is liable only if a reasonable person entering the land would not realize danger frustrates the purpose of comparative fault). Plaintiffs misconstrue the import of the trial court's conclusion. The issue is not whether plaintiffs were comparatively negligent, which is indeed a jury question, but, rather, whether the presence of a warning would have had any additional effect on plaintiffs' knowledge of the risk. In other words: Was there a causal link between the absence of a warning and Gary Garrison's injuries? If, on the summary judgment record, the trial court were able to conclude that the absence of a warning sign was not the cause of Garrison's injuries, then it would be appropriate for it to decide the issue as a matter of law. *See Shum v. Venell*, 273 Or 143, 145-46, 539 P2d 1085 (1975) (where the plaintiff is already aware of the danger of which the defendant allegedly failed to warn, failure to post warnings cannot be considered a causal factor contributing to plaintiff's harm).

In this case, the record contains ample undisputed evidence that plaintiffs were aware of the danger posed by the transfer station's design. In her deposition, Heather Garrison stated that it was "a very eerie feeling getting in the back of the pickup over that height" and that she and her

husband "were both leery" of falling. Gary Garrison acknowledged in his deposition that it was a long way down from the upper slab to the trailers below and that he could be hurt if he fell. He further acknowledged that, when he had used the transfer facility in the past, he had been concerned about the danger of falling. On this record, it is impossible to see how a warning sign would have altered plaintiffs' behavior in any way or how the absence of a warning exposed plaintiffs to any greater risk of harm than if they had been warned. Accordingly, the trial court did not err in granting summary judgment to defendant on plaintiffs' second specification of negligence.

Affirmed.